[Civ. No. 18274.   Second Dist., Div. One.   Sept. 24, 1951.]

DONALD R. GIDDINGS, a Minor, etc., et al., Appellants, v. THE SUPERIOR OIL COMPANY (a Corporation), Respondent.

Demler & Eckert and William T. Dalessi for Appellants.

Moss, Lyon & Dunn, Sidney A. Moss and Henry F. Walker for Respondent.

DRAPEAU, J.—The instant action is for damages because of injuries sustained by the minor plaintiff while playing on defendant's oil well and pump, known as Perham No. 7, located in the city of Torrance.

At the conclusion of the trial and upon motion made therefor, the court directed the jury to bring in a verdict in favor of defendant. From the judgment which followed, plaintiffs appeal.

Regarding the propriety of a directed verdict, it was stated in *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177, 181 [140 P.2d 467] as follows: "The power of the court in passing upon such a motion is strictly limited. It has no power to weigh the evidence, but must view it in the light

most favorable to the party against whom the direction is asked and accept every inference and presumption in his favor that may legitimately be drawn therefrom, and the motion can be granted only when, on such a consideration of the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of that party if one were given. (*Gish* v. *Los Angeles Ry. Corp.* (1939), 13 Cal.2d 570, 573 [90 P.2d 792]; *Newson* v. *Hawley* (1928), 205 Cal. 188, 190 [270 P. 364]; *Wiswell* v. *Shinners* (1941), 47 Cal.App.2d 156, 159, 163 [117 P.2d 677]; *Barty* v. *Collins* (1930), 109 Cal.App. 94, 96 [292 P. 979].)''

On the afternoon of January 28, 1949, plaintiff Donald R. Giddings, a high school student aged 14 years, was injured while playing on defendant's oil well pump. Donald lived about two blocks from the pump and for two years immediately preceding the accident had lived in the vicinity of oil wells and pumps, and had seen them in operation almost every day. He had never before thought of playing on them because his mother had warned him against doing so. On the afternoon in question Donald and his companion were playing in a nearby field and noticed defendant's pump about a block and a half away. They decided to go over as ''it looked like it would be fun to play on it.''

This pump was painted dark blue and was operated by an electric motor at a speed producing between five and seven revolutions per minute. One such revolution resulted in a complete turn of the crank and a corresponding seesaw motion of the walking beam or rocker arm, which was a horizontal bar at the top of the pump. The pump was partially surrounded by a railing. There was attached to one side a stepladder with a hoop at the top. The pump stood alone in a field some distance from the nearest highway, and about 300 or 350 feet from the nearest dwellings. It was visible from the Giddings home.

The two boys took a path through the field leading to the pump. They climbed up the ladder through the hoop and onto the walking beam, where they sat—one at either end, going up and down with the motion of the pump like a teeter-totter. They then dropped to a horizontal crossbar where Donald hung with his hands seesawing up and down, his feet resting on a solid piece ''right in the middle.'' While so playing, Donald's right leg caught in the revolving movement of the pump and was severely injured.

Donald testified that he saw the guardrails around the pump and knew they were put there to keep people off; that he saw no warning signs of danger.

Donald's companion testified that after riding on top of the walking beam, they first sat and then hung on the crossbar which went up and down like a seesaw. At the time Donald was injured they were playing on the crank webs, of which there were two, one on either side of the pump. Each boy stood on one web as it slowly revolved and held onto the vertical connecting rods.

The witness Farris testified that on several occasions he had seen boys riding seesaw on the rocker arm of defendant's pump.

Mrs. Ellis stated she saw the two boys on the pump on the day of the accident. Previously she had seen boys playing around the pump outside the guardrails, but never on the pump or inside the rails.

Defense witness Pegors, who was employed by another oil company which had a well 250 feet from defendant's pump, testified that he saw Donald walking on the revolving crank while he hung by his hands to the crossbar; that he knew the boys were in danger and was on his way to shut off the motor on the pump when the accident occurred.

Mr. Beauchamp, a safety engineer for the State of California administering the laws of the Labor Code, testified that it would be practicable for defendant to enclose its pump with a woven wire fence, 6 or 7 feet high which could be done for a nominal sum; that such a fence would not interfere with the operation of the pump. Also, that guardrail around the pump is one of several recognized types complying with the law for the protection of workmen.

It is here contended that the facts proved at the trial were sufficient to bring the case within the doctrine of attractive nuisance; hence it was for the jury to determine (1) whether the pump was an attractive nuisance; and (2) whether plaintiffs were entitled to the benefit of that doctrine.

The following language from the opinion in *Doyle* v. *Pacific Elec. Ry. Co.*, 6 Cal.2d 550, 552 [59 P.2d 93] appears applicable to the instant situation:

"It is a general rule that the owner of property owes no duty to mere trespassers to keep the property in safe condition. To this rule the law has declared an exception, in this, that where an attractive contrivance is maintained with the knowledge of the owner, alluring to children but inherently dan-

gerous to them, this constitutes neglect out of which liability will arise for injuries resulting from such neglect. It is want of ordinary care to maintain such premises, and the question as to whether the device complained of constitutes a trap dangerous to children is a question of fact ordinarily to be determined by the jury. (*Faylor* v. *Great Eastern etc. Co.*, 45 Cal.App. 194 [187 P. 101].) But it is not every contrivance or apparatus that a jury will be entitled to treat as an 'attractive nuisance.' Before liability is imposed, always there must be something in the evidence tending to show that the device was something of a new or uncommon nature with which children might be supposed to be unfamiliar, or not to know of its danger. Thus in *Loftus* v. *Dehail*, 133 Cal. 214, 218 [65 P. 379], it was said by this court: 'But it by no means follows, as has been said, that anything or everything which a jury may find, or a court may determine, to be attractive as a playground or plaything for children casts a responsibility of guard and care upon the owner of that thing. Moving street cars and moving vehicles upon the street are irresistibly attractive to many children, and thousands daily imperil their lives by climbing on and off of them while in motion. Venturesome boys, and even girls, make playgrounds of unfinished buildings, climb perilous heights, and scamper over insecure boards and rafters. If an owner became responsible, merely because children were attracted, it would burden the ownership of property with a most preposterous and unbearable weight.' "

Again in *Morse* v. *Douglas*, 107 Cal.App. 196, 201 [290 P. 465], it was said: "The contrivance must be artificial and uncommon, as well as dangerous, and capable of being rendered safe, with ease without destroying its usefulness, and of such a nature as to virtually constitute a trap into which children would be led on account of their ignorance and inexperience."

An oil well pump is not an uncommon contrivance. It is very common and well known throughout Southern California, particularly to the minor appellant. That it is dangerous to play around moving machinery is a matter of general knowledge, and "certainly such danger is familiar to persons whose mental attainments are such that they are pupils in high school." (*Walker* v. *Pacific Elec. Ry. Co.*, 66 Cal.App.2d 290, 294 [152 P.2d 226].)

In the circumstances presented, the doctrine of attractive nuisance is not applicable herein.

Appellants also urge that the trial court erred in excluding from evidence the fact that prior to the instant accident, a complaint had been filed on behalf of a 7-year-old child for alleged injuries received on an oil pump of respondent situated in a different locality. By this evidence, appellants "sought to prove that respondent had *notice* that an oil well pump of the type in question is an attraction to children and that it is a dangerous instrumentality."

Before evidence of this character may be received "it must first be shown, or an offer made to show, that the conditions were similar." *Thompson* v. *Goodrich (B. F.) Co.*, 48 Cal. App.2d 723, 729 [120 P.2d 693]. What might constitute an attractive nuisance to a 7-year-old child would be immaterial as applied to a 14-year-old high school student.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 19, 1951. Carter, J., voted for a hearing.